Case on the docket is County of St. Clair v. Caseyville Rifle and Pistol Club, cause number 5-09-100. Party's ready. Mr. Schwartank, you may proceed, sir. May it please the Court, Mr. Chairman, Mr. Wild, Mr. Chairman. Your Honors, this is a case being appealed from the dismissal of an eminent domain proceeding brought pursuant to the County Air Corridor Protection Act, authorizing the County of St. Clair, who I represent and I'm Charlie Schwartank, to seek eminent domain for incompassible uses in this situation, namely Caseyville Rifle and Pistol Club's gun range, which was built in the APZs, or Accident Potential Zones, at the end of the runway. The St. Clair County contests the case being dismissed for, and this is important, lack of subject matter jurisdiction. That's why we were dismissed. Based on the lack of a passage of an enabling resolution. Yes, sir. And we were also contesting the order of February 13th, 2009, granting attorney's fees. The county seeks eminent domain claims to be reinstated and award fees to be overturned. We believe the standard of review on the first issue, that being the dismissal for lack of subject matter jurisdiction, to be de novo. I'm going to have to break that down very quickly. We believe it's de novo because it was a new oral motion we perceived would have to be pursuant to 2619. If it's not, the standard would be manifest the weight of the evidence. The reason we would believe it would be new, and we would direct the court's attention to the October 2007 hearing and transcript, wherein it was clear from the diatribe between the court and Mr. Sterling that this matter was new. The court had asked why it hadn't been addressed before, and it was placed in the category of, well, all these things run together, these eminent domain complaints are filed, and the county or the municipality says blah, blah, blah, and apparently they missed it. Let me ask a question, Mr. Schwartz, procedurally here, and I thought of this a few minutes ago. I wish I had checked the record on this, but Mr. Sterling filed a traverse to the complaint. And was that traverse, had it been heard before this October 2007 hearing? No, it hadn't. My understanding was it had all just been held in advance, and all that was going to be argued before this trial started. Is that what had happened? Well, I think referring back to that diatribe, the court was wondering why this issue wasn't brought forth before. And it's important, the timing of this new issue, and that's why I raise it. Yes, a traverse was filed in December of 2005. We filed an amended complaint, and they adopted it by reference in their response. But there hadn't been actually a traverse hearing? No, sir. Okay. With respect to the attorney's fees, the standard review is abuse of discretion. Now, specifically, and I'll do this very briefly because I recognize this panel as having heard the injunction hearing, defendant's gun range is in the flight path of APZ 1 and 2 in the ACUS. And specifically, the ACUS deals with the incompatibility of people gathering and, in this instance, shooting in the APZ. The gun range, the U.S. Department of the United States Department of Air Force determined the use incompatible, noting that it would subject patrons and visitors to increased risk of aircraft accident and other hazards, expose the public to significantly higher danger, and above-ground firearm use or explosives would constitute additional potential hazards to the aircraft's safety. Now, that is placing this County Air Corridor Protection Act into a new ballgame as far as eminent domain statutes. I don't think you will find any of the cases cited by either side dealing with a statute that allows eminent domain under these specific circumstances in a finite zone dealing with the health, safety, and welfare of the public, and in this case, according to the U.S. Air Force, the Airmen, too. Now, I think it's important, if I can get back to three items, and we believe that the County Air Corridor Protection Act, in and of itself, satisfies a lot of the concerns of Dee Benedetto and of the court cases that have been cited in this court. In particular, it is so specific, finite, and definitive that it satisfies the authority concerns and the necessity concerns. You're arguing that an enabling resolution is not necessary because of the terms of the Act? The requirements that the other court cases refer to are satisfied by that. So I would, yes, argue that as well, and I am going to argue that we do have an enabling resolution. The other two arguments I'm going to make is that the defendant has waived any claim to subject matter jurisdiction or jurisdiction or to dismissal. And we know from the Shapiro case and all the other cases that with respect to necessity or authority, those items are waivable. We are also going to argue ratification by resolution. Now, I think it's clear under Belleville-Toyota, which was the last Supreme Court case that enveloped itself into what subject matter jurisdiction is, how it changed in 1964, and what it is today, that we are dealing with a jurisdictional defect with respect to subject matter jurisdiction. In particular, Belleville-Toyota has set the record straight on justiciable issues and the fact that a legislature cannot take away from the circuit courts by creating non-waivable provisions, cannot take away waiver from the circuit courts, and they're perfect. So in essence, everything is justiciable. Now, in this particular case, that's exactly what the judge did. Judge Radcliffe denied, really denied me making any waiver arguments, denied true consideration of the resolution because he said he did not have subject matter jurisdiction. Now, assuming as because none of the cases cited by either party, again, claim this is subject matter jurisdiction, it's foundational, it's described as foundational, but it's not subject matter jurisdiction. But I recognize that this court will endeavor to correct that, and then I would imagine both sides are going to argue what the corrective measures should be, recognizing that this isn't subject matter jurisdiction. And our position is that the actions of the defendant waive any claim whatsoever to the failure to obtain an enabling ordinance or resolution. In particular, they filed a very specific traverse. In our complaint, we had a paragraph 2. Plaintiff, by appropriate action of its governing body, has determined that the land, which is the subject of this action, is necessary for the purposes hereinafter described. And our petition goes on to describe the land and everything else. They filed a specific traverse, a motion to dismiss, denying several paragraphs and making specific issues about, for instance, our authority, where they claim that we didn't have authority in as much as Mascuda had declared the site compatible. Specifically limiting their approach and their attack. And your argument is the filing of the specifics waives any just general traverse that the burden shifts to you to prove the purpose, necessity, et cetera? Those specifics. Because as we said in Shapiro and as all these other cases recognized, these issues can be waived. If I don't raise the statute of limitations in an FVLA or an NMAL case, that's going to be trouble, whether I'm plaintiff or defendant, or if I don't recognize it. And the point being is that they did not answer paragraph 2. Now, I know under the Civil Procedure Act, 216, or 216N, subpart B, that if you don't answer it, you admit it. Now, there is one case, and I believe it's Miller, that says, well, we had this guy, he was pro se, and 216 is not going to apply to eminent domain. Well, that may be something that is applicable in a pro se situation. I don't think it's applicable here. However, the case rolls on for two years. You wouldn't dispute, would you, that Mr. Sterling in this case, he could have just filed something very similar to what was filed in this pro se case and said, I dispute your authority to bring this condemnation action? I think he could have. But the fact that he took a specific route, led the court and I in another direction, and both the court and I had the right, I think, to believe that those weren't issues. But it goes on, because in their affirmative defenses, and they cite an affirmative defense, which specifically recognizes the offending resolution, or rather, action of the body that they claim was no good on May 31st. In their fifth affirmative defense, they say, at the May 31st, 2005, Sinclair County Board meeting, Robert Genge moved and Ken Easterly seconded a motion to authorize litigation to cause the activities of the defendant, Caseyville, in placing a marksmanship facility on the subject premises to cease, which said motion carried unanimously. They recognized that this was out there. Even though the public record didn't really tell all that, did it? That's exactly what the public record said. What they had in there? I thought what the public record said was that the motion for litigation didn't really tell what the litigation was about, or who was direct to that. He may have added Caseyville. I think there was some more. I was quote quoting the defendant's allegation, which I take to be an admission. Was there a reason they didn't specifically address and enact an enabling ordinance or resolution? They did in a resolution in October of 2007. What was the basis of this motion to dismiss that came in at the last minute? The basis of the motion that was dismissed was that very charge that I just read without, let's take Caseyville out of it, did not allow the court to take subject matter jurisdiction. Was it an oral motion, written motion? It was an oral motion. However, in that October hearing, Mr. Sterling referred to it as one of his affirmative defenses. I went through the written affirmative defenses on my way over here today. I saw no such affirmative defense. That's why I'm taking it to be an oral motion at the last minute, as described in our brief. The situation, though, is how do you take a party who cuts a specific, limited path on their traverse, goes through two years of litigation, has been offered money and given appraisals, showing what the land is, has a specific petition, satisfying all the requirements of the act, we believe, and specifically identifying the property? And then come back later and claim in some form or fashion they're prejudiced, that there's some issue here. And to do that would lend itself to a party setting up that very scenario, earning all the attorney's fees, wasting all the time, two years, and then claiming, I guess in essence, that they didn't know, or this technical defect attacks or doesn't allow the court to have subject matter jurisdiction. Now, Shapiro says that can be weighed, and I couldn't think of a stronger set of facts where parties took 20 depositions, Washington, D.C., Japan, California, went through voluminous discovery. And the subject defending motion, May 31st, 2005 motion, was known to the other side. And then for them to come in in October, literally five minutes before trial, and while I've got experts, Air Force people, county officials out in the hallway getting ready to come in and testify. It puts us into a waiver situation. People simply cannot sit on a right like this and bring it up at the last minute. When was the traverse going to be heard? It had been filed. It challenged the authority. I mean, was it going to be heard along with the evidence in the bench trial or? It was, yes. I mean, my experience is the traverse is heard. You have a traverse hearing early on. And if the taking authority gets past the traverse, then you go forward with discovery and so forth and so on and ultimately go to trial. Why wasn't? I can't speak for Judge Radcliffe. I do know that your statement is correct. It was going to be heard, and that's probably because the traverse and motion to dismiss were fairly definitive and specific, and they would require evidence regarding the necessity and the items that go into necessity. And as the case law says, you have a situation where necessity can be proved at the prima facie evidence hearing. And I think that's where it was all planned to go about. I mean, I guess the point I'm making is all of these depositions and everything were all taken before any of the traverse was heard. I would expect it to because, you know, the court referred to authority, necessity, and I think that if there's an element out there that would preclude this litigation going on for two years with great time going under the bridge and great expenses occurred, as we can see by their attorney's fees, which I'm arguing against, that that is the type of issue that has to be made you can't sit on. And it wasn't made in this specific traverse. As far as let me switch to the enabling resolution and the issue and setting aside the one that was passed later that we claim ratification on, you know, the statute that allows for eminent domain, the Air Corridor, County Air Corridor Protection Act, says that the county may use eminent domain. In other words, the county has discretion to use or not use eminent domain. That's correct. In the absence of an enabling resolution, how do we determine that the county has exercised that discretion? I would agree with the court, but I would also argue that because this statute is so specific and it's geared to health, safety, and welfare, that all of those concerns, what land, what are we talking about, where is the area, it's known. It's the APZs and we have a danger. And so you are correct that initially the case law does say you need a resolution. Now, October 29, 2007, I obtained a resolution that is on all fours. There were no issues raised at the time with it. And that resolution ratified, and this is an important word, too, ratified what the board had done back in May. Expressly ratified. Expressly ratified. Now, why do I get all excited about the word ratified? Because all of the cases cited by Plano, Goldman, Miller, DiBenedetto are dealing with situations where someone messed up on describing the property and they came back and amended something. And the Supreme Court said, and you can see it in Goldman, you can see it in Miller, and the appellate court, DiBenedetto, they say these things can be cured. But what they all argued is that in this instance, the municipality or governmental body seeking eminent domain did not ratify what it did. It simply amended it. Now, the 5th District got it right in a case which… Let me stop you for a minute. Forest Preserve v. Miller, I thought, in its appellate court case, they specifically said you cannot come back later the way I read it. Well, and that's why I distinguish on the facts, because that was an amendment. I mean, didn't it come along in Forest Preserve, it passed one later, similar to here, and they said you can't cure it, it has to be, the enabling resolution has to be passed prior to commencement of the action? Well, it was… I think Forest Preserve said that. Yes. And then, you know, also you cited the 5th District case, R.T., which maybe holds otherwise. Right. It was decided, I think, correctly, because they used the term in that instance correctly, and I think the court recognized this was a ratification. And if you look at Goldman closely, and DiBenedetto closely, and Brown closely, you will see that those cases are completely distinguishable because they dealt with an amendment, not a ratification. Okay. Thank you, Mr. Schwartz. I will give you a chance for a rebuttal here in a minute, okay? Thank you. Can I bring up attorney's fees at that time? Sure. All right. I'm going to let you do that because…go ahead. May I please report, counsel? Now, this case is basically brought under the Air Protection Act, and the arguments that he's made with respect to jurisdiction and waiver are basically an attempt to say that because of the Air Protection Act and safety, public safety, health and welfare, he gets a pass with respect to due process and compliance with the act itself. This is not a matter that we're here today on the safety issue. There's no evidence in the record about bullets or anything leaving the facility or airplanes crashing on the people. This is a matter of did the court properly dismiss the complaint? What was the basis of your oral motion to dismiss? Your Honor, that's really interesting because it didn't come about in the form of an oral motion. What happened was… That's what the order says. I understand that's what the order says. But what happened was the judge was presented with the action of the county, which appears at C-417. And the judge recognized immediately that this is a matter of not being able to prove their complaint and a matter of not being able to show that they could go forward with authority. And he raised it. And this is really important. This was not the trial of the case. We have never gotten to the depositions of the appraisers or anything that was going to be dealt with. This was all with respect to the Traverse. October 11, 2007 was a Traverse hearing. And all these depositions had to do with whether the county was going to be able to prove that there was a violation. There was not a violation, but that there was incompatibility of this site for the facility. And you didn't know that until the day of the hearing when you made the oral motion? Your Honor, what we had received in discovery, we anticipated that the very first thing they were going to do was show us some authority. When we walked in the courtroom and asked them what they were going to do with respect to that, it was a new issue to them. It was a surprise. They didn't realize that one of the elements of the Traverse was that they had to prove all the allegations in their complaint. And in paragraph two of their amended complaint, they had just amended it in March of 2007. It incorporated the original complaint, which said they had authority. And your question with respect to what that resolution provided is really important because when you look at C-417, it's a one-sentence situation. It reads, the motion was made by Mr. Gantz, seconded by Ken Easterly, to approve the recommendation as presented by counsel in executive session regarding potential litigation. Can it be by roll call? Now, it doesn't say litigate. It says approve the recommendation. It doesn't have a street address. It doesn't have a property description. It doesn't have a permanent parcel number. It doesn't name a defendant. It doesn't mention him in the domain. That executive session is not the basis, and the judge recognized it immediately. He didn't need to see Goldman. The fact of the matter is this is more egregious than Goldman because in Goldman, we knew what they did at the executive session. We thought that at some point in time when we got to the Traverse, they were going to tell us what they did in the executive session. Their discovery had never given us that. When we raised the issue and the judge came in and he was handed C-00417, it went from there. And if you'll read that transcript, it's clear that he recognized that this was a situation that they needed to go back and see. They had the opportunity at that point to produce what happened at the executive session. They could have asked for continuance, but they had these people there strictly for the Traverse. As a matter of fact, Mr. Swartout claimed executive privilege or whatever on what happened in the executive session, didn't he? I think he was asked what happened in there, and he said, well, that's privileged. Well, they have just never even been willing to address the issue. The county doesn't believe that that's an element that they have to disclose. And frankly, you can see in the transcript that says, well, this could have been a suit against anybody over anything. But it doesn't even say litigation. Let me ask a question. Subsequently, the county did pass a resolution, which by its own terms says it expressly ratifies what was previously done. And my question is this. That ordinance, if it had been passed earlier, before the suit was commenced, you don't claim any defects in that ordinance if it had been passed earlier? We haven't addressed that issue. But I can tell you that the judge at the April 11th hearing said, well, it wasn't at that one. We had a subsequent hearing on November the 8th, and what happened was we had the hearing on October 11th for the Traverse. And then we had the interim period where they were allowed to brief that they had authority. And during that time, the judge had given them the opportunity to tell us what happened at the executive session. But they came back, and instead what they did was they adopted an ordinance that ratified their prior actions. And their prior actions, basically, the operative words in it were approve the recommendation. And at that point in time, he said, this resolution, and this is directly to answer your question, appears to meet the necessary authority requirements. I can dismiss your lawsuit, and if this is urgent, you can file it again tomorrow. And that's not what they did. They decided to appeal that decision. And their consequences would be you'd have a new evaluation date, got a lot of lost time, things like that. Well, if the real reason to appeal them is to avoid the attorneys, they already had an evaluation date issue hadn't even arisen. They amended their complaint in 2007. They would argue that we've got a new evaluation date from that when you amend your complaint. And they could have amended their complaint. That's one of the reasons they didn't, but the attorneys were there. But this overriding argument that he makes is an attempt to get a pass from Section 20 of the Air Protection Act, notwithstanding any other provision of this act, any power granted under this act to acquire property by condemnation or eminent domain, is subject to and shall be exercised in accordance with the eminent domain act. And we know that when they adopt that ordinance, that it isn't sufficient to solve the case. The City of Rockford case says you can't do it. The Benedito case says you can't do it. And when you look at the Benedito, they point out, they go all the way back to saying the law is clear that if you don't have the resolution or ordinance, you can't go and that the Supreme Court has defined authority as the resolution or ordinance. But then they comment, and I'm reading from page 7 of the opinion real quick. When they say you can't retroactively do it, they say, we recognize that our decision may appear to be based on adherence to an overly technical rule of law, but repeat the words of the Supreme Court in bold, quote, whether in this case a specific evil resulted from the deficiency is beside the point. The procedure followed obviously lends itself to improper conduct on the part of public officials. Based on the words of that approval recommendation, those public officials could claim that the executive session said anything. This is not a case where the trial judge made a mistake. It is a case where the county should be required to go back. And by the way, when we got this case on the 8th of November, they didn't offer this amendment that they had, this now-adopted corrective resolution. They didn't offer to make it part of the case or anything else or indicate that they were using that as the foundation. They presented it to the judge and went forward with their argument. This is not a case that there's any ratification argument. What about county of Wabash v. Partee? And I'm quoting this decision of this court. It says, the law on this issue is clear. Where a condemning authority does not pass a specific resolution before filing its complaint in condemnation, that defect is not fatal to the condemnation suit if the evidence presented at the hearing on the motion to dismiss and traverse shows that the taking is necessary. Your Honor, we never got to that point. And the fact of the matter is necessity is going to be part of this traverse hearing if it's ever heard. In fact, we've taken all these depositions. The evidence that was presented was what you see. And in the process, the prejudice that the gun club is subjected to when we've gone all this way, we've taken all these depositions, and in fact, they don't want to come up with what happened at the executive session. Clearly, it was not good faith, and it's not due process for the gun club. But what was the prejudice to the gun club? I mean, you were going along, I mean, you knew what your property was there. You knew what property they were trying to take. You went and took a bunch of depositions and everything. I mean, how were you prejudiced by not having the resolution? I mean, because a minute ago you were citing the case that says it appears to be a technical issue and so forth. I mean, you knew that you were defending an eminent domain case for this property. We did. But, Your Honor, the main prejudice is that, keep in mind in our brief, we make the point that this is a David and Goliath situation. They're taking these depositions to break the gun club. This is a case where the gun club doesn't have the money to defend this case, and all of this business about this is a public safety matter and that we're going to shoot down airplanes, and in the record they attach what they've given this court to read as voluminous. They bring in the depositions of the pilot. They bring in the depositions with respect to the penetration of bullets. That's not the issue before this court. We've been forced to spend, as the record shows, over $120,000 defending our position, while they don't even have any kind of authority to base their case on. And if that's not prejudice, that money is not coming from any easy source. I'd like to go on for a turn. You'll probably start over. I mean, if you win the appeal, you're going to have to start over. It's going to cost more. It is, Your Honor. But, Your Honor, this case, that's a really excellent point. This case is going to cost them more money whether this court affirms or whether this court reverses. We haven't even gotten to the level of value yet. We haven't even gotten to the point where we have a definite valuation date. This is a continuing attempt to force the Case Bill position to having to go away because of lack of money. And with respect to the attorneys' argument, on pages 16 and 17 of our brief, they list 12 items. Time doesn't permit me to go through them all, but they're like, Greensfellow didn't enter his appearance, and Weil didn't enter his appearance, and Casey didn't retain Greensfellow and Casey. The whole point of that is that's disingenuous. The only one of those that I really want to address is Rule 3.7. 3.7 is the Advocate Witness Group, and the purpose of 3.7 is to keep the trier of fact from being confused about what he's hearing and what he should be considering. If you're a witness, you're supposed to testify from personal knowledge. If you're an advocate, you're supposed to take that testimony of that witness and the evidence of the case and deal with it in an argumentative fashion, advocating for your client. It's clear from the record, at the very opposite of this case, that Caseyville recognized the situation was one where Don Weil was going to be called as a witness. And Caseyville went out and made it a point to hire Harry Sterling, and in that process, the county argues that we didn't enter our appearance. We made it very clear that we were not entering our appearance. We made it very clear we were complying with Rule 3.7. There's not one instance the county can cite where I signed the pleading or Greenfelder signed the pleading or Harry Sterling did not sign the pleading or Harry Sterling didn't appear, I did not appear at any point in time acting as counsel. Now, if you didn't appear at any point in time acting as counsel, why should you be paid attorney's fees? Your Honor, I think that that's really an important question. In my brief, you'll see that I cite the Levitt and the Mercury Vapor cases, and they say that's the way to do it. The point is somebody's got to do the work. And we also cite the cases about when you're entitled to fees. And you're entitled to fees even in a pro bono case where you expect to get paid. You're entitled to fees in situations where you're the classic example. Well, let's say Mr. Sterling's representing an attorney in a divorce case, okay? And that attorney does research and helps Mr. Sterling out in various ways. Does the opposing party in that divorce case run the risk of having to pay attorney's fees to the opposing party because that person's an attorney who does work? Your Honor, I don't think section 508 of the Domestic Relations Act addresses that general issue. You don't understand what I'm getting at because this is a case you never entered your appearance in the case. You're listed as a witness, okay? You're one of the founding members of the Caseyville Pistol and Gun Club. And you're presented as not a party named party but as a representative of the party. Isn't that all true? Your Honor, that is all true. And then we get to the end and you say, well, I did attorney's work too. I wasn't paid for it. Your Honor, there is no confusion there. I was acting as an attorney. It was clear. I took the depositions of Colonel Ryder and of Colby Newman. The point, though, is I am not a party. I am representing the Caseyville Rifle and Pistol Club. This facility is not a place that I make my women shoot. This is a situation where my client, Caseyville Rifle and Pistol Club, had to have the services rendered. They argued that it would be an unjust convictment to pay Green's shelter for the fees. This is just a part of the program. There's other issues out there. The fees in the injunction case, if you'll note the exhibit that is in the record, those fees are not included in what is being asked for here. The point is, in your example, the client that he represented is a lawyer, and when that lawyer does the work, he's doing it for his personal benefit. I'm not getting any personal benefit out of the representation I'm doing of the gun club. The gun club is the entity. The gun club is the client. The gun club is the one that is being sued in this case. There are other attorneys in my firm who put in time on this, but the bottom line is Green's shelter has performed the services, and Green's shelter has not violated Rule 3.7. They have structured this case to be in total compliance with 3.7, so that there isn't an issue of that happening. Is it fair to say that you see the distinction between Don Weil as the person that, you know, I haven't filed in on this site, on any of the cases of those sites, 20 times, I mean 10 times in 20 years. This is not my personal vendetta. I'm here because I've represented the cases of the gun club. The record shows I've represented them over 40 years. I have, in that process, never made it a point to bill them, but the point that you make with respect to all of a sudden they see that they've got these bills out there, they are really vehemently objecting to these bills. And the best analogy I can give you for this is when you were practicing law and somebody picked up the phone and he calls you and they said, would you do this for me? And you immediately said, oh, this isn't going to be bad. I'm going to do this while I'm free. I'm not even going to charge them for this. But as you got downstream, you saw that it was going to become major litigation and you made a decision to go forward and bill them. Now, that's related specifically to what happened in this case because we have cross-appealed for the portion of the fees prior to my deposition when the judge said we couldn't have fees. Does the record reflect whether you'd ever sent a bill to Caseyville? Oh, yes, and our bill is in the file and it's very detailed from day one to day nine. And they've been sent to Caseyville. They owe this amount of money. Caseyville has been billed monthly for the costs and advances that we made and they've been billed for the fees at the point in time when the judge dismissed the case. Now, I make that distinction because— Let me make sure I understood what you just said. Monthly they were billed just for out-of-pocket expenses. And those bills didn't show any attorney's fees. They only saw attorney's fees whenever the case had been dismissed. They may have shown a minor attorney fee depending on who the lawyer in the Greenfellers' office did what. But the point I'm making with respect to the fees and the billing is the judge and the order. The order, we take the position on cross-appeal that the judge abused discretion in denying the fees up to the point of the deposition. Now, in that process, we take the position that that's arbitrary. Like the phone call case I cited to you, when it becomes apparent that you're going to have to bill, you don't say, well, I've made the decision today, I'm going to bill from this time forward. You say, I'm going to bill for the fees. That's what happened in this case. And we suggest that no reasonable person would adopt the position taken by the judge in denying that first 25 or the period up to my deposition. Thank you very much. Thank you, sir. Mr. Schwartow? I was intrigued at Justice Wexton's question that turned the rest of the argument into more money. And a traverse, by definition, in all of these cases, by definition, is a denial of material allegation of fact. Paragraph 2 was never denied. Now, if you're walking around preaching and complaining about all the money, and you've got May 31, 2005 in your pocket, how do we stop the attorney's fees? How do we stop the extra costs? We create rules, and maybe this is a case of first impression. I don't think it should be, based upon my experience, is that the traverse being specific needs to be made and not carried to the last moment. Now, whether that was intentional or by law, there's two choices. Either it was intentional or it was just brought up at the last minute because they missed it. Let me ask a question. I was under the impression that you were about to go forward with the bench trial here, but was this just the traverse hearing you were just starting? Well, no, it was the whole trial. It was going to be the injunction and the amended domain. We had joined them for purposes of saving money. Okay. Now, I thought I heard them say they hadn't even got any evaluations from any appraisers yet. No, that was at the beginning of the case that an appraisal was made and given to them. You had one anyway. But I find it interesting that Mr. Weil wants his money that Judge Daugherty had given before his depo. Now, in his depo, he testified that he didn't do anything to prepare for his depo unequivocally. No. When we get the bill and Judge Daugherty sees it, bill for prepare for deposition, in quotes, Don Weil, attend and be deposed. And he billed for it. Now, in his deposition, he testified that he, in essence, was not charging Caseyville. And Randy Sieper, who's here today, who's the president, testified that he has not paid Don Weil for any services and has not retained him as an attorney in this matter. I think we can rely on that, and I think Judge Bradcliffe can rely on that, although he was gone by the time attorney's fees was decided. And if it's going to change, if the composure is going to change, then we have to follow, as officers of the court, seasonal supplementation in letting the court know and letting the opposition know that Mr. Weil is now an attorney. With respect to Harry's bill, once again, an abuse of discretion standard, his bill is so lacking in detail that from the standpoint of practicality and reality, if you were to look at that and say, I know what's coming out of my pocket, am I going to pay this? I'd say it was abuse of discretion to allow it because it's so lacking in detail. In the end run, this case was improperly dismissed on the basis of subject matter jurisdiction. I know we have to go past that and decide other issues. I was not allowed to argue those issues, specifically waiver and ratification. But this could have all been avoided and the money referred to throughout this argument could have been substantially honed down had the specific objection that was made orally and apparently known to the defendants been made in a timely manner. That's all I have, Your Honor. Okay, thank you, Ms. Schwartz. Thank you for your time today, Justice. All right, we thank you both for your briefs and arguments. Everybody did an excellent job directing our attention to the issues. We'll take this matter under advisement.